UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------x

RINALDO RIZZO,

Plaintiff,

-against- 13 Civ. 8664

DF LAND LLC, GLENN DUBIN, individually, EVA DUBIN, individually and BRENDA AMES, individually,

Defendants.

---------------------------------------------------x

DEPOSITION of the Defendant, BRENDA GAIL AMES, taken pursuant to Notice, held at the offices of CCI, 2200 Atlantic Street, Stamford, Connecticut, on July 14, 2015, at 10:04 a.m. before a Notary Public within and for the State of New York.

form.

A I don't understand the term "look out for."

Q Could she review his work, go to the place where he was supposed to have done the tasks that he was assigned and make sure he did it?

A She did not do that.

Q Did anyone aside from yourself do that?

A No.

Q Okay.

A The Dubins, obviously, because they were there.

Q You said that part of Mr. Rizzo's work would be to travel with the family to other locations, correct?

A Traveling to other locations, and he may or may not be with the family.

Q Then when they reached those locations, it was his job to do what?

A To --

MR. SALINS: Objection to the form.

B. Ames

THE WITNESS: There was flexibility when he arrived at new locations because they were not set jobs. It was not like he was there every day or the family was there every day. So whatever was called upon or was necessary, he worked with the scheduling people and he worked to communicate issues.

He was basically in Florida the eyes and ears of what needed to get done, and he communicated to the assistants or the financial people or the security people or the contractor or the vendor. He oversaw all communications.

Q That was for the 1090 North Lake Way location?

A Yes.

MR. SALINS: Objection to the form.

Q Did he provide similar services for the Ranch Properties?

A No. There was a manager in the Ranch

B. Ames

Properties.

Q Did he provide some services for the family at the Ranch Properties?

A He did.

Q As needed?

A Correct.

Q Do you know if he provided any services for Dubin & Company as well?

A I do not believe he provided any services for Dubin & Company.

Q Do you know if he worked with Dubin & Company employees to accomplish the family's objectives?

MR. SALINS: Objection to the form.

A I don't know if he did.

Q What about Gleneagles? Do you know if he assisted in the operations of Gleneagles?

A Gleneagles was terminated before he was hired.

Q What about the 1040 location? Did Mr. Rizzo have responsibilities there as well?

A He was sometimes called to assist the

not asking her to recall anything about it. I am asking if Mr. Rizzo from the beginning was responsible for cooking dinner.

A They were in Florida on that day, and he told me during our meeting that he understood that he would be cooking in Florida.

Q In this email he says that he had not had a day off since December 16th and it was December 28th.

Do you know if at times Mr. Rizzo was not given days off during the week?

A I --

MR. SALINS: Objection to the form.

THE WITNESS: I disagree with that.

Q So you do not believe that Mr. Rizzo ever worked a full week, seven days without a day off?

A He may have worked it, but he didn't request -- he did the work with us to get him a day off.

B. Ames

Q How would he work with you to get him a day off?

A When you are traveling with the family, it is hard to have a day off in the sense that you can't go to your own home when you are staying in quarters.

Q How would you have a day off if you are traveling with them?

A You are not supposed to answer emails or reply to things, but if he chose to look at emails or answer a question or walk down the stairs, I can't assure him a day off unless he wants to keep himself away from the family.

Q If he was given an order or somebody requested that he do something, was he supposed to say no?

A He is supposed to say, "It is my day off, and contact Brenda and she would take care of it."

Q If you go to Rizzo 147 --

A Yes.

Q -- do you recall the situation with the breakers at the Florida house?

B. Ames

A No.

Q I'm sorry?

A No.

Q It says, "Bring back to the office." Do you know what office Ms. Feierstein is referring to?

A No.

Q Turn to the next page marked as Rizzo 152, and it continues on to 153, Rizzo 153.

A Yes.

Q This relates to an issue, or this is an email that you sent in December of 2011 relating to the faucets in the kitchen.

Do you know where the kitchen was that this is referring to?

A 1090 North Lake Way.

Q In Florida?

A Yes.

Q Tell me why Mr. Rizzo was copied here.

A He was in Florida at the time.

Q Did he have any duties related to there?

A No. I just wanted to make sure that everybody knew what was going on.

A He did not.
Q Did he continue to work once the family arrived in Florida?
A The wife was paid as well, and she is a contract worker during that time.
Q They worked down there?
A Yes. We -- the Dubins paid for the child care for the child.
Q They were performing work in Florida?
A Yes.
Q They were compensated for that work?
A Yes.
Q It was a vacation?
A Their flights were paid for wife and daughter. The flights were paid for.
Q Was Mr. Rizzo taking a vacation at that time?
A At the end of it he asked for it.
Q That was canceled, right?
MR. SALINS: Objection to the form.
A Not canceled. I asked him if he was flying back or is he staying in Florida with his family, and would he be flying on a